UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MARQUITA TOBIN                                                                                    Plaintiff

v.                                                                              Civil Action No. 3:24-cv-329

INTERLINC MORTGAGE SERVICES, LLC                                                  Defendant

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Plaintiff Marquita Tobin ("Tobin") moves to remand. [DE 32]. Defendant InterLinc Mortgage Services, LLC ("InterLinc") responded. [DE 39]. Tobin did not reply. InterLinc also moves to dismiss Tobin's claims under Fed. R. Civ. P. 12(b)(6) and strike a portion of Tobin's complaint under Fed. R. Civ. P. 12(f). [DE 29]. Tobin responded [DE 33] and InterLinc replied [DE 37]. These matters are ripe. For the reasons below, Tobin's Motion to Remand [DE 32], InterLinc's Motion to Strike [DE 29] and InterLinc's Motion to Dismiss [DE 29] are **DENIED**.

### I.   BACKGROUND

According to the Complaint, InterLinc issued a mortgage for Tobin to purchase a home. [DE 28 at 131]. Tobin asserts that the mortgage "was to include a Kentucky Mortgage Credit Certificate, which was to provide [Tobin] with its benefits (a tax credit up to twenty-five percent of the annual mortgage interest paid, up to $2,000.00 per year.)" [*Id.*]. Tobin believes that InterLinc breached the mortgage contract "by failing to cause the Kentucky Mortgage Credit Certificate to apply to [Tobin's] mortgage." [*Id.* at 132]. And she alleges that "when this matter was brought to the attention of [InterLinc], they offered a paltry payment of $2,250.00 to [Tobin] without any written waiver, contract modification or other writing to evidence a modification of the parties

1

contract." [*Id*.]. Tobin argues that InterLinc's actions constitute a breach of contract and have "damaged [Tobin] economically." [*Id*.].

Initially filed in Jefferson County Circuit Court on May 10, 2024, Tobin asserted two claims against InterLinc: (1) breach of contract, and (2) violation of the Kentucky Consumers Protection Act ("KCPA"), Ky. Rev. Stat §367.170. [DE 1-1 at 8]. InterLinc removed this case to federal court under diversity jurisdiction. [DE 1-1]. Tobin filed a Motion to Remand [DE 8] that was denied by this Court [DE 14]. And InterLinc filed a previous Motion to Dismiss. [DE 7]. However, the Court denied InterLinc's Motion to Dismiss as moot, and issued an order requiring Tobin to file an amended complaint [DE 25], which she did on February 7, 2025 [DE 28]. Tobin's amended complaint only asserts a claim for breach of contract. [*Id*. at 132].

Tobin now files a Second Motion to Remand. [DE 32]. She argues that remand is warranted now that she dropped the KCPA claim, because only her breach of contract claim remains, and the amount in controversy is under the required threshold. [*Id*. at 175]. And InterLinc moves to dismiss Tobin's complaint pursuant to Fed. R. Civ. P. 12(b)(6) arguing Tobin's amended complaint does not satisfy the federal pleading standard. [DE 29]. InterLinc also moves to strike a portion of Tobin's amended complaint under Fed. R. Civ. P. 12(f). [DE 29].

## II.   DISCUSSION

When confronted with a motion to remand and a motion to dismiss, a court must resolve the motion to remand first. *Open Sys. Techs. DE, Inc. v. Transguard Ins. Co. of Am.*, No. 1:14-CV-312, 2014 WL 3625737, at *1 (W.D. Mich. July 22, 2014).

### A. Tobin's Second Motion to Remand [DE 32]

Removal to federal court is proper for "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Diversity

2

jurisdiction gives "[t]he district courts . . . original jurisdiction [over] all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a), (a)(1). A defendant removing a case has the burden of proving jurisdiction. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921).

Determination of federal jurisdiction in a diversity case should be made at the time of removal. *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 872 (6th Cir. 2000); *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996). The Supreme Court has held that a post-removal amendment of a complaint reducing damages to below the statutory minimum does not divest a federal court of diversity jurisdiction. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292-93, (1938) ("[E]vents occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached."). Similarly, the Sixth Circuit has held that a post-removal stipulation to a reduction in damages does not deprive a federal court of jurisdiction because "events occurring after removal that reduce the amount in controversy do not oust jurisdiction." *Rogers*, 230 F.3d at 872. "If plaintiffs were able to defeat jurisdiction by way of a post-removal stipulation, they could unfairly manipulate proceedings merely because their federal case begins to look unfavorable." *Id.*

InterLinc removed this case from Jefferson County Circuit Court based on diversity jurisdiction. [DE 1]. Not long after, Tobin filed her initial Motion to Remand [DE 8], arguing that the amount in controversy does not exceed the jurisdictional threshold. This Court denied Tobin's initial motion to remand finding that "the amount-in-controversy requirement of 28 U.S.C. § 1332(a) [was] satisfied, and the Court has diversity jurisdiction." [DE 14]. The Court found that

3

the $75,000 jurisdictional threshold was met because Tobin sought "contract damages up to 60,000, compensatory damages for the alleged KCPA violations, and statutory attorneys' fees." [*Id*.]. The attorneys' fees were calculated at 50% of the total damages, which amounted damages to at least $90,000, which is above the jurisdictional threshold. [*Id*.].

Prompted by the Court, Tobin amended her complaint to remove her KCPA claim and request for attorneys' fees, leaving only her breach of contract claim. [DE 28].

Tobin now moves this court to remand again. [DE 32]. Tobin argues that her "First Amended Complaint fails to establish diversity jurisdiction under 28 U.S.C. § 1332 because the amount in controversy does not exceed the sum of $75,000.00." [*Id*. at 175]. Tobin asserts that:

> [Her] first motion to remand was denied, because at the time she lodged a count against [InterLinc] for violation of the [KCPA], which would provide damages separate from the breach of contract damages and attorney [sic] fees in her original complaint. As [Tobin's] First Amended Complaint stands, her best day in court would only be $60,000, which is well short of the amount required to survive this motion to remand because she discarded her claims under the [KCPA].

[Id. at 177]. In other words, now that she no longer asserts a claim under the KCPA, she is below the required amount in controversy.

If "the plaintiff after removal . . . by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction." *St. Paul Mercury Indem.*, 303 U.S. at 292. As a result, dropping her KCPA claim in her amended complaint [*See* DE 32], does not deprive this Court of jurisdiction. *See Rogers*, 230 F.3d at 872. Tobin's Second Motion to Remand [DE 32] is **DENIED**.

### B. InterLinc's Motion to Dismiss and Motion to Strike [DE 29]

1. Motion to Dismiss

    a. Standard

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss if the complaint "fail[s] to state a claim upon which relief can be granted[.]" To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). As stated, when considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *See Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. 555 (citations omitted). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a

5

claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. Of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

### b. Analysis

InterLinc argues that Tobin's complaint does not satisfy the federal pleading standard because (1) Tobin does not identify any contract or specific contractual term that gives rise to her breach of contract claim, (2) "Tobin's mortgage does not contain any obligation pertaining to a tax credit[,]" and (3) Tobin's complaint includes only conclusory allegations. [DE 29 at 158-64]. In response, Tobin argues that she met her burden "by specifically alleging that the defendant was contractually obligated [to] secure the tax credit referred to as 'MCC', but it failed to do so, and

caused her financial damages."[1] [DE 33 at 181]. Additionally, Tobin asserts that her amended complaint is sufficient under Fed. R. Civ. P. 8 because "notice pleading occurred." [*Id*. 180].[2]

---

[1] The Kentucky Housing Corporation ("KHC") runs the Kentucky Mortgage Credit Certificate Program. https://www.kyhousing.org/About-KHC/Pages/default.aspx. (last visited Apr. 23, 2025). KHC was created by the Kentucky General Assembly in 1972 and is a self-supporting, public corporation of the Commonwealth of Kentucky. KHC is a quasi-government agency, which is administratively attached to the Kentucky Finance and Administration Cabinet. *Id.* "Mortgage Credit Certificates (MCCs) are an alternative to mortgage revenue bond financing and a means of providing financial assistance to first-time home buyers (with some exceptions) for the purchase of qualifying residences." https://www.kyhousing.org/Partners/Mortgage-Lending/Documents/MCCProgramManual.pdf. (last visited Apr. 23, 2025) at 1. "An MCC "converts" a portion of an available mortgage loan interest deduction into a credit against the homeowner's federal income taxes. This tax credit has the effect of reducing the mortgage interest rate and mortgage loan payments for persons who make qualified purchases of residences by reducing their federal income tax liability." *Id.*

The MCC Program "procedures are designed to coincide with the standard loan processing and underwriting procedures that are in place at most mortgage-lending institutions. Borrowers apply for an MCC by the participating lender completing the MCC Loan Reservation System in conjunction with an application for a loan from one of the participating lenders." *Id.* at 7. A borrower who is purchasing a residence applies for an MCC through a participating lender at the same time as applying for a mortgage loan. *Id.* at 8. At loan closing, the lender collects from the borrower the MCC fee prescribed in the MCC Program Manual. *Id.* at 8 and 12. The lender is required to make the MCC reservation through KHC's Loan Reservation System on the KHC Lender Website and provide the required documents. *Id.* at 8. "The lender processes the loan application and electronically submits the MCC compliance package to KHC prior to closing utilizing the Transmittal form and attaching the required documents." *Id.* Once the lender has provided all the documents to KHC and satisfies all the program requirements, KHC will issue the MCC-009 to the borrower. *Id.* at 12-13.

The Court may take judicial notice of the MCC Manual for context regarding the program. A court may consider "public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies" when ruling on a motion to dismiss, which would not require converting it to a motion for summary judgment under Rule 56. *Armengau v. Cline*, 7 F. App'x. 336, 344 (6th Cir. 2001) (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)). The Court may take judicial notice of public documents and government documents because their sources "cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (courts may take judicial notice of public records). For instance, both the Sixth Circuit and Western District of Kentucky have on many previous occasions taken judicial notice of facts contained within the U.S. Food and Drug Administration ("FDA") records and reports because "they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Mitchell v. Qualitest Pharms.*, 187 F. Supp. 3d 831, 832 (W.D. Ky. 2016), dismissed, No. 16-5650, 2017 WL 11779566 (6th Cir. Mar. 3, 2017). The MCC Program manual cited above is freely accessible online and the accuracy of its sources are readily determined and cannot be reasonably questioned.

[2] The standard for pleading in federal court is not notice pleading. The pleading standard used in federal court is set forth by *Bell Atl. Corp. v. Twombly,* which requires a stricter "plausibility" pleading standard. *Twombly*, 550 U.S. at 570.

Tobin's amended complaint alleges that:

On or about February 21, 2021, the defendant issued a mortgage to the plaintiff to secure the home where she now resides. The mortgage is a contract under Kentucky law and is attached as exhibit one . . . The contract was supported by the mutual assent of the parties wherein the defendant loaned money and agreed to secure the tax credit benefit in exchange for monthly payments with interest and a $500.00 payment for the tax credit to be secured, via the Kentucky Mortgage Credit Certificate, which was to provide the plaintiff with its benefits . . . A copy of the real estate closing document showing the plaintiff paid $500.00 to the defendant for this tax credit is attached as exhibit two of this first amended complaint. So, a contract was formed for a traditional mortgage and tax credit.

The defendant breached the contract by failing to cause the Kentucky Mortgage Credit Certificate to apply to the plaintiff'[s] mortgage.

[DE 28 at 131-32]. In addition, Tobin attaches a recorded copy of the mortgage document [DE 28-1] as well as the Loan Distribution Instructions [DE 28-2] to her amended complaint. The Loan Distribution Instructions state, under "Services Borrower Did Not Shop For," that the Borrower paid $500.00 for "MCC Fee to IMSL[3] F/B/O KY MCC Program."

InterLinc asserts that while Tobin identifies the mortgage as the relevant contract that InterLinc allegedly breached, the mortgage does not contain a provision that requires InterLinc to "secure the MCC" or apply the MCC to her mortgage and, as a result, dismissal is required. [DE 28 at 132]. In response, Tobin asserts that

[t]he complaint sufficiently pleads breach of contract because the defendant accepted [] $500.00 to secure the MCC tax credit, failed to do so, and then admitted its breach in the letter sent to plaintiff. . .The MCC benefit was part and parcel of the mortgage service package, and in the breach of contract claim, it was specifically and properly articulated in the First Amended Complaint.

[DE 33 at 182].

"Under Kentucky law . . . to recover in any action based on breach of a contract, a plaintiff must show the existence and the breach of a contractually imposed duty." *Lenning v. Commercial*

---

[3] IMSL stands for InterLinc Mortgage Services, LLC as referenced in the recorded Mortgage at DE 28-1 at 136.

8

*Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). Thus, a party alleging a breach of contract "must establish three things: 1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract." *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. App. 2009). It is well settled that lender/borrower relationships, such as in a mortgage, are contractual. *See Morgan v. HSBC Mortg. Servs., Inc.,* 930 F. Supp. 2d 833, 839 (E.D. Ky. 2013). Therefore, because mortgage relationships constitute contractual relationships, *Mills v. Flagstar Bank*, No. CV 6: 17-294-DCR, 2018 WL 1050456, at *5 (E.D. Ky. Feb. 26, 2018); *GMAC Mortg., LLC v. McKeever*, 08-cv-459, 2010 WL 2639828, *5 (E.D. Ky. June 29, 2010), and it is clear from the complaint attachments that Tobin entered into such a relationship with InterLinc, she has sufficiently identified the existence of a contract. *Willingham v. NovaStar Mortg., Inc.,* No. 04-CV-2391, 2006 WL 6676801, at *33 (W.D. Tenn. Feb. 7, 2006). Moreover, it is clear from the "Loan Disbursement Instructions" at closing that Tobin paid a fee related to the MCC. [DE 28-2 at 151 (under "Services Borrower Did Not Shop For" it indicates that the Borrower paid $500.00 for "MCC Fee to IMSL F/B/O KY MCC Program")]. Specifically, the fee was paid to InterLinc for the benefit of the "KY MCC Program." As such, from the Loan Disbursement Instructions it appears clear that Tobin paid a fee for service to InterLinc for the benefit of ("f/b/o") the MCC Program. These facts lend support and plausibility to Tobin's claims, as does the recorded copy of her mortgage. Construing the Complaint liberally in Plaintiff's favor, *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976), and accepting as true all factual and permissible inferences therein, that she paid InterLinc for the MCC certificate that was related to her mortgage and did not receive the MCC certificate or the resulting credit, Plaintiff alleges facts that could plausibly entitle her to relief.

9

Citing *Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*, 492 Fed. App'x 518 (6th Cir. 2012), InterLinc asserts that a plaintiff must identify specific terms of the contract or attach the relevant contract that includes the provision that the defendant had allegedly breached requiring dismissal. [DE 29 at 159]. InterLinc further asserts that "Sixth Circuit '[c]ourts routinely grant motions to dismiss where complaints fail to identify a contractual provision that allegedly was breached.'" [*Id.* at 159 n.1 (citing *GE Elec. Co. v. S & S Sales Co.*, 2011 WL 4369045, at *2 (N.D. Ohio Sept. 19, 2011))]. On review, there are numerous unique factual considerations that lead to dismissal in those cases which are inapplicable here.

In *Northampton Rest. Grp., Inc.*, Northampton alleged that FirstMerit's practice of resequencing the restaurant's deposit account was a breach of the parties' contracts. Yet Northampton did not attach any contracts to its complaint and did not include the language of any specific contractual provisions that had been breached by the bank. 492 F. App'x at 521. In that case, however, FirstMerit attached copies of the parties' contracts to its motion to dismiss, which expressly showed that Northampton agreed that the bank could resequence the deposit account in the manner of its choosing. *Id.* Furthermore, the Court found that "even in the absence of an agreement, the Ohio commercial code explicitly allows banks to reorder account transactions in any manner they see fit." 492 F. App'x 518, 522 (citing Ohio Rev.Code Ann. § 1304.29(B) (LexisNexis 1994)). The Court then held that "[g]iven these facts, Northampton failed to state a claim for breach of contract upon which relief could be granted, and dismissal of that claim was appropriate." 492 F. App'x 518, 522. *Northampton Rest. Grp.*, is thus distinguishable from the case before the Court. The documents attached to the Complaint in this case do not foreclose relief as they did in *Northampton Rest. Grp.*

10

InterLinc also cites *KSA Enterprises, Inc. v. Branch Banking & Tr. Co.,* 761 F. App'x 456, 460 (6th Cir. 2019) to support its proposition that because Tobin has not identified the specific provision breached the case must be dismissed. Again, *KSA Enterprises* is distinguishable. KSA's admitted that BB&T never gave "notice that any of [KSA's] loans were in default or that the debt would be accelerated under the terms of the notes or loan agreements." *Id.* Moreover,

> KSA did not allege that BB&T changed their course of business, even after BB&T determined that KSA had violated the Debt Service Provision and after BB&T warned KSA that its loans were 'problem loans.' At most, KSA alleges that BB&T made 'threatening' communications, which prompted KSA to refinance the loans with another lender and pay BB&T prepayment penalties. But the mere threat that the loans were in or nearing default is not a breach.

761 F. App'x 456, 460. Simply put, KSA could not identify a specific contract provision that was breached because KSA admitted that BB&T never acted under the contract, just threatened. As a result, the case was not dismissed because KSA failed to specifically identify the alleged provision at issue, but because under the facts of the case it could not. The other issues in *KSA Enterprises* are not directly applicable to this case.

InterLinc also asserts that Tobin's complaint includes only conclusory allegations. [DE 29 at 158-64]. The nature of Plaintiff's claim is sufficiently articulated such that InterLinc and the Court need not "guess" what Plaintiff is alleging. It is clear Tobin alleges she paid for the MCC as part of the closing for her mortgage and that she never received the benefit of the MCC. Although the Court believes that the claim could be better pled and that the contractual language may not be in the recorded mortgage itself, the Complaint is not defective in its entirety and the Loan Disbursement Instructions certainly lend sufficient credibility to Tobin's claim for breach of contract. Generally, the amended complaint contains "sufficient factual information to provide the 'grounds' on which the claims rest." *Greene v. Benefit Mortg. Corp.,* No. 08-12968, 2009 WL

11

56056, at *3 (E.D. Mich. Jan. 8, 2009) (citing *Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir. 2008)).

Tobin has sufficiently alleged a contractual relationship for services and that InterLinc failed to perform the services necessary for the fee paid to receive the MCC certificate and that she has been financially harmed as a result. *Abma*, 326 S.W.3d at 8. InterLinc is not left to guess at what the claim is; it is clear. InterLinc's arguments seeks to hold Tobin to an elevated pleading standard. "The *Twombly/Iqbal* standard is a pleading standard, not a proof standard," and the Court agrees with Tobin that she has pleaded sufficient facts to state a plausible claim for relief for breach of contract. *McCoy v. Stonebridge Life Ins. Co.,* No. 2:11-CV-178, 2012 WL 4498819, at *2 (E.D. Tenn. Sept. 28, 2012). Whether she could survive a motion for summary judgment on the issue or succeed at trial as to any disputed factual matters is not at issue at this stage of the litigation. *Id.* Accordingly, InterLinc's Motion to Dismiss [DE 29] is **DENIED**.

2. Motion to Strike

InterLinc moves this Court to strike Tobin's exhibit attached to her amended complaint which shows that InterLinc attempted to pay $2,250. [*See* DE 28-3]. InterLinc argues that "[t]his Court cannot consider a compromise offer to establish a breach of contract[,]" because it is an improper exhibit attached to Tobin's amended complaint pursuant to Rule 12(f). [DE 29 at 164]. Tobin fails to address this argument in her response. [*See* DE 33].

a. Standard

Rule 12(f) permits the Court to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *Tirone v. Am. Lebanese Syrian Associated Charities, Inc.,* No. 20-CV-02807-SHM, 2021 WL 1206413, at *8 (W.D. Tenn. Mar. 30, 2021). "Motions to strike are viewed with disfavor and are not frequently

12

granted." *Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015). Courts will grant a motion to strike "where the complaint contains immaterial allegations that have no bearing on the subject matter of the litigation" or "where the requested relief is unavailable." *Johnson v. Cty. of Macomb*, No. 08-10108, 2008 WL 2064968 at *1 (E.D. Mich. May 13, 2008). The decision to grant or deny a motion to strike is within the discretion of the district court. *Seay v. Tennessee Valley Auth.*, 339 F.3d 454 (6th Cir. 2003).

   *b. Analysis*

  Federal Rule of Evidence 408 provides:

> (a) Prohibited Uses. Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> (1) furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or a statement made during compromise negotiations about the claim ….
> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408. In sum, Rule 408 prohibits admission of evidence of settlement offers and conduct or statements from settlement negotiations. *Eid v. Saint-Gobain Abrasives, Inc.,* 377 F. App'x 438, 443-444 (6th Cir. 2010). The rule serves to promote settlements, as well as exclude irrelevant or unreliable evidence. *Id.* at 444.

  In *Tirone,* the defendant moved to strike several paragraphs and an exhibit from the complaint which contained an offer for settlement. 2021 WL 1206413, at *8. The court found that it was not appropriate to consider Rule 408 at the pleading stage to strike the paragraphs and exhibits because it was unclear whether the materials were appropriate to strike or whether they could be properly admitted for other purposes. *Id.*; *see also Bailey v. Gibson Hotel Mgmt., Inc.*,

13

No. 3:18-CV-167, 2018 WL 5815548 at *2 (E.D. Tenn. Nov. 6, 2018); *Collier v. Cobra Power Corp.,* No. 3:14-1759, 2015 WL 1600774 at *2 (M.D. Tenn. Apr. 8, 2015). In *Collier*, the court refused to strike emails attached to the pleadings under Rule 12(f) because the contents themselves were not "redundant, impertinent, or scandalous." 2015 WL 1600774 at *2. The court also decided that, because Rule 408 does not completely prohibit the admission of settlement negotiations, the emails were potentially admissible for other purposes. *Id.* at *2-3. Additionally, in *Berry v. Lee*, 428 F. Supp. 2d 546, 563-564 (N.D. Tex. 2006) a district court denied a motion to strike because it was unclear whether Rule 408 would prohibit the introduction of the challenged paragraph but allowed the defendant to move to exclude the evidence, if appropriate, at a later stage of the case. *But see, U.S. ex rel. Alsaker v. CentraCare Health Sys., Inc.,* No. CIV. 99-106(JRTRLE), 2002 WL 1285089 at *2 (D. Minn. June 5, 2002) (noting that "courts have routinely granted motions to strike" based on Rule 408 and granting the motion to strike from the complaint paragraphs relating to settlements); *Philadelphia's Church of Our Savior v. Concord Twp.,* No. CIV.A. 03-1766, 2004 WL 1824356 (E.D. Pa. July 27, 2004) (a motion to amend the complaint would be futile because a motion would be granted under Rule 408 to strike the allegations relating to a settlement agreement).

For the purposes of the Motion to Strike, it is not certain that the challenged exhibit is inadmissible. [DE 28-3]. Rule 408 prohibits Tobin from using evidence from settlement negotiations to prove the validity of her claims or the amount of damages. *See* Fed. R. Evid. 408. The challenged exhibit is a letter which "apologizes for any inconvenience caused by this clerical error" and states "[e]nclosed is an additional refund check in the amount of $2250.00." [DE 28-3 at 154]. The letter does not specifically say that it is a settlement offer, or for settlement of a claim, but instead encloses "an additional refund check." A refund check is not necessarily a settlement

14

offer and without the facts and circumstances surrounding the letter and the referenced conversation, the Court cannot find it violates Rule 408 or is subject to dismissal under Rule 12(f).

At this preliminary stage, the Court will not strike the challenged exhibit from the amended complaint based on Rule 408, *Tirone*, 2021 WL 1206413, at *8, and InterLinc's Motion to Strike [DE 29] is **DENIED**.

## CONCLUSION

Accordingly, the Court, having considered the parties' motions and related filings and being otherwise sufficiently advised, **IT IS ORDERED** as following:

(1) Tobin's Motion to Remand [DE 32] is **DENIED**;

(2) InterLinc's Motion to Dismiss [DE 29] is **DENIED**; and

(3) InterLinc's Motion to Strike [DE 29] is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

April 24, 2025

15